UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **YELDY CLARK** | **CIVIL ACTION** |
| **VERSUS** | **NO: 23-2005** |
| **LIBERTY MUTUAL INSURANCE COMPANY** | **SECTION: "P" (3)** |

## ORDER AND REASONS

Before the Court are two Motions to Fix Attorneys' Fees and Costs filed by Defendant Liberty Mutual Insurance Company ("Liberty"). The first (R. Doc. 103) seeks fees relative to Liberty's Motion to Compel[1] and the second (R. Doc. 104) relative to Liberty's Motion for Sanctions.[2] Plaintiff Yeldy Clark filed an opposition only to Liberty's request for fees as to its Motion to Compel.[3] Having reviewed the pleadings, record, and the applicable law, the Court will grant in part and deny in part both motions.

**I.   Background**

The factual and procedural background of this matter is laid out in detail in the Court's Order granting Liberty's motion for sanctions and recommending the

---

[1] R. Doc. 26.
[2] R. Doc. 70.
[3] R. Doc. 107. In entering a description of her brief while e-filing, Ms. Clark indicated her memorandum was intended as an opposition to R. Doc. 104—i.e., Liberty's Motion for Attorneys' Fees relative to its Motion for Sanctions. The substance of Ms. Clark's opposition, however, focuses exclusively on R. Doc. 103—i.e., the Motion for Attorneys' Fees for the Motion to Compel. The Court thus construes Ms. Clark's memorandum, as written, as an opposition to R. Doc. 103.

1

District Court dismiss Ms. Clark's claims.[4] In brief, Ms. Clark filed this suit after an alleged automobile accident; then, throughout the discovery process, repeatedly defied court discovery orders and manifested continued disregard for the rules of litigation.[5] As a result, Liberty moved the Court to compel Ms. Clark's discovery responses and requested Ms. Clark be sanctioned for her extreme noncompliance.[6] The Court granted the Motion to Compel in part and granted the Motion for Sanctions.[7]

Liberty's entitlement to attorneys' fees and costs from Ms. Clark is undisputed. The Court has already held that attorneys' fees and costs are appropriate with respect to both of Liberty's motions.[8] *See* Fed. Rs. Civ. P. 37(a)(5)(A); (b)(2)(C). And, although Ms. Clark raised certain objections to the undersigned's Report and Recommendation relative to dismissal of this action, Ms. Clark did not appeal the Court's order relative to Liberty's entitlement to fees.[9] Ms. Clark substantially disputes only the proper amount of fees to be rewarded relative to Liberty's Motion to Compel.[10]

Liberty seeks $25,885.00 in attorneys' fees for efforts in preparing and raising its Motion to Compel and $26,675.00 for its Motion for Sanctions.[11] Although the fee demand for the sanctions motion has not been challenged, the undersigned has

---

[4] R. Doc. 108.
[5] *Id.* at 1–7.
[6] R. Docs. 26, 70.
[7] R. Docs. 66, 98, 108.
[8] *Id.*; *see also* R. Doc. 52 at 17:8–9.
[9] R. Doc. 113.
[10] R. Doc. 107.
[11] R. Docs. 103-1 at 1, 104-1 at 1.

reviewed it for reasonableness in the interest of justice. In addition, as contemplated by Rule 37 of the Federal Rules of Civil Procedure, the undersigned has considered Ms. Clark's status as an individual, rather than a corporate entity; her claim that counsel was to blame for certain failings;[12] and the fact that Ms. Clark may not obtain any award in this matter from which attorneys' fees would be drawn in determining the appropriate award of fees.[13]

## II. Standard of Law

"The calculation of attorney's fees involves a well-established process." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Id.* (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). Second, courts consider whether to adjust the lodestar amount. *See id.* "There is a strong presumption that the lodestar award" is a reasonable fee. *Hoenninger v. Leasing Enterprises, Ltd.*, 2023 WL 5521058, at *2 (5th Cir. Aug. 25, 2023) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999). Still, courts must consider the *Johnson* factors to determine whether to adjust the lodestar. *Hoenninger*, 2023

---

[12] To be clear, the undersigned continues to believe based on the record, including extensive live testimony, that this claim is without merit. Nonetheless, and to avoid unnecessary litigation on this issue, that contention will be taken essentially at face value for purposes of calculating the fee award.

[13] This analysis assumes, solely for purposes of argument, that the District Court will adopt the Report and Recommendation. Given that the undersigned has assumed *arguendo* that the present lawsuit will not generate funds from which Ms. Clark may pay Liberty's fees, Liberty may file a motion for reconsideration relative to the fee award should Ms. Clark's lawsuit not be dismissed.

WL 5521058, at *2 (discussing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989)). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account." *Heidtman*, 171 F.3d at 1043 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993)).

### III. Lodestar Amount

#### A. Reasonable Hourly Rates

"'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. "An attorney's requested hourly rate is prima facie reasonable when she requests that the lodestar be computed at her 'customary billing rate,' the rate is within the range of prevailing market rates and the rate is not contested." *White v. Imperial Adjustment Corp.*, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (citing *Louisiana Power & Light Co.*, 50 F.3d at 328).

Liberty seeks fees on behalf of Kristen Beckman and Elizabeth Higdon of the law firm Pipes Miles Beckman, L.L.C.[14] Ms. Beckman charged hourly rates in this

---

[14] R. Docs. 103-1 at 4, 104-1 at 5.

4

case of $300 from 2019 through 2023 and $350 beginning January 1, 2024.[15] Ms. Higdon charged an hourly rate of $225 for her work in this matter.[16]

Ms. Beckman is a 2005 graduate of Loyola University New Orleans School of Law where she served as the Substance and Citation Editor for the Loyola Law Review.[17] Following graduation, Ms. Beckman joined the law firm of Barrasso Usdin Kupperman Freeman & Sarver, where she became an equity partner.[18] In 2019, she formed the law firm of Pipes Miles Beckman, L.L.C., where her practice focuses on defense of high-exposure bad faith and coverage litigation.[19]

Ms. Higdon graduated from Tulane University Law School, where she served as a member and managing editor of the Tulane Maritime Law Journal, in 2021.[20] Ms. Higdon joined Pipes Miles Beckman, L.L.C., in 2022 and her practice has since focused on first- and third-party disputes, bad faith, and bodily injury claims.[21]

Together with the qualifications and experience listed above, Liberty points to case law in this District in support of the hourly rates sought.[22] Ms. Clark argues, as to fees sought for Liberty's Motion to Compel only, that the rates of both attorneys "exceed prevailing market rates in the Eastern District of Louisiana for similar work."[23] Ms. Clark, however, cites no case law supporting that proposition and makes

---

[15] R. Docs. 103-1 at 5–7, 104-1 at 5–8.
[16] R. Docs. 103-1 at 8–9, 104-1 at 8–9.
[17] R. Docs. 103-1 at 5, 104-1 at 5.
[18] *Id.*
[19] *Id.*
[20] R. Docs. 103-1 at 8, 104-1 at 8.
[21] *Id.*
[22] R. Docs. 103-1 at 6, 8–9; 104-1 at 6–7, 9.
[23] R. Doc. 107 at 5.

5

no challenge to those rates relative to Liberty's Motion for Sanctions. When the hourly rate is unopposed, it is prima facie reasonable. *Louisiana Power & Light Co.*, 50 F.3d at 328 (quoting *Islamic Ctr. of Mississippi, Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989)).

The Court finds that Ms. Beckman's hourly rates of $300 and $350 are reasonable with respect to both the Motion to Compel and the Motion for Sanctions given her qualifications, the supporting declarations, and case law in this District. *See, e.g.*, *Kingsbery v. Paddison*, 2022 WL 393564, at *2 (E.D. La. Feb. 9, 2022) (finding $375/hour to be a reasonable rate for an attorney with 30 years of experience); *Hubert v. Curren*, 2018 WL 4963595, at *4 (E.D. La. Oct. 15, 2018) (reducing rate of partner with 17 years of experience from $400.00/hour to $300.00/hour as prevailing rate in this district); *Ranger Steel Servs., LP v. Orleans Materials & Equip., Co.*, 2010 WL 3488236, at *3 (E.D. La. Aug. 27, 2010) (finding $395.00 per hour to be a reasonable fee for a partner-level attorney in New Orleans).

Similarly, upon review of rates deemed reasonable in this District, the Court finds that Ms. Higdon's hourly rate of $225 is reasonable given her qualifications, the supporting declarations, and case law in this District. *See, e.g.*, *Metro Serv. Grp., Inc. v. Waste Connections Bayou, Inc.*, 2022 WL 17830466, at *8 (E.D. La. Dec. 21, 2022) (finding $200/hour to be reasonable for an associate with 5–6 years of experience); *Grant v. Gusman*, 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023) (finding $225/hour for a senior associate and $200/hour for less experienced associates reasonable); *Girod*

*LoanCo, LLC v. Heisler*, 2020 WL 3605947, at *8 (E.D. La. July 2, 2020) (finding $235/hour for an associate to be reasonable).

### B. Hours Expended

The party seeking the fee bears the burden of documenting and supporting the reasonableness of all time expenditures for which compensation is sought. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Counsel for the prevailing party should make a good faith effort to exclude from fee request hours that are excessive, redundant, and otherwise unnecessary[.]" *Id.* at 434. The party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 n.15 (5th Cir. 1987). Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)). Fee requests must thus demonstrate "billing judgment." *Id.* The remedy for failing to exercise billing judgment is to exclude from a fee award hours that were not reasonably expended. *Id.* Courts may do so either by "reduc[ing] the hours awarded by a percentage" or via line-by-line analysis of the movant's billing. *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002) (quoting *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)); *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *overruled on other grounds by Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).

### 1. Billing Judgment

Courts may determine whether a party has met its obligation to exercise billing judgment in good faith by considering the complexity of the prevailing motion for which it seeks fees in the factual and procedural context of a given case. *See, e.g.*, *Drs. Le & Mui, Fam. Med. v. St. Paul Travelers*, 2007 WL 4547491, at *5 (E.D. La. Dec. 19, 2007); *Davis v. Am. Sec. Ins. Co.*, 2008 WL 2228896, at *4 (E.D. La. May 28, 2008). Liberty argues that it exercised billing judgment and that its detailed time sheets demonstrate that the hours sought relative to both motions are reasonable, justified, and grounded in fact.[24] The time sheets submitted by Liberty reflect the bills sent to it by its counsel. *See Leroy*, 831 F.2d at 585. With respect to fees sought for the Motion to Compel,[25] however, Ms. Clark argues that Liberty's hours should be reduced significantly based on excessive billing, duplicative entries, and failure to exercise billing judgment.[26]

Ms. Clark asserts that, despite her delay in producing discovery responses, the hours sought by Liberty as to the Motion to Compel are excessive given the simplicity of the underlying discovery dispute.[27] This argument captures one of the central issues presented by Liberty's fee motions. True, Liberty has been thorough, precise, and careful throughout its briefing and attached fee itemization.[28] And the

---

[24] R. Docs. 103-1 at 9–10, 104-1 at 10.
[25] Ms. Clark does not dispute the reasonableness of the hours claimed for Liberty's Motion for Sanctions.
[26] R. Doc. 107 at 3–4.
[27] *Id.*
[28] *See* R. Docs. 103-3, 104-3. Ms. Clark claims that, by having cut certain billing entries, Liberty's submission "casts doubt on the accuracy and thoroughness of the

8

discounted items discussed below constitute exceptions to, rather than a pattern in, Liberty's time-entry practice. Nonetheless, Liberty's total fee request is higher than the undersigned can assess against Ms. Clark given the nature of the motions and the issues on which Liberty prevailed.

The asymmetry between Liberty's careful approach to fees and the high amount demanded seemingly arises from a strategy used in the defense of this matter. Liberty confronted discovery responses that were deficient in myriad ways throughout the litigation. And it worked to obtain supplemental responses from Ms. Clark for months, visiting and revisiting multiple deficiencies. Yet, as a strategy matter, Liberty opted to focus on the most egregious—and the simplest—discovery violations and the instances in which Ms. Clark disobeyed court orders when litigating its motion to compel and motion for sanctions. This was a sound strategy. It likely contributed to Liberty's success in the matter. It certainly contributed to the efficiency of the litigation. But it resulted in a circumstance in which the legitimate, reasonable efforts undertaken by Liberty's counsel to address discovery deficiencies go beyond the efforts for which Liberty can recover in its fee motions. In short, the issues that Liberty chose to bring to court were narrower and simpler than the universe of issues confronting Liberty in its defense.

---

remaining fee application." R. Doc. 107 at 5. To the contrary, the exercise of billing judgment requires removing billing entries, and Liberty's time is accounted for quite thoroughly in its detailed time sheets.

Liberty's Motion to Compel[29] was complicated by the avoidance and persistent noncompliance of Ms. Clark, the need to analyze the law of two different states, and the need to explain specific inadequacies within the discovery responses. Yet, the increased complexity of the Motion to Compel (and the sanctions motion) does not fully reconcile the wide disparity between the hours sought here and the hours found to be reasonable in other cases in this District. *Cf. Kingsbery*, 2022 WL 393564, at *2; *Jackson v. Scott*, 2008 WL 5216225, at *4 (E.D. La. Dec. 11, 2008); *Aker Sols. Inc. v. Shamrock Energy Sols., L.L.C.*, 2021 WL 291256, at *4–5 (E.D. La. Jan. 28, 2021). Thus, the undersigned will reduce Liberty's requested fee award to reflect that—although legitimate work performed to the client's benefit—not all of Liberty's efforts directly correlate to the issues on which Liberty prevailed and for which it is entitled to fees. In addition, the undersigned will impose a reduction for the reasons discussed below.

### 2. Duplicative Billing

Liberty asserts that it removed duplicative billing from its billing records for both its Motion to Compel and Motion for Sanctions.[30] Ms. Clark, without reference to any specific timesheet entries, claims that multiple attorneys billed for attending the same conferences, preparing similar filings, and reviewing the same documents.[31]

Courts often exclude entries that are duplicative. *See, e.g.*, *Alfasigma USA, Inc. v. EBM*, 2018 WL 3869496, at *5 (E.D. La. Aug. 15, 2018). "[W]hen a party chooses

---

[29] R. Doc. 26.
[30] R. Docs 103-1 at 11, 104-1 at 11.
[31] R. Doc 107 at 4.

two attorneys to represent it in a lawsuit, the opposing party is not required to pay for duplicative work incurred by the attorneys." *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (citing *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996)). Similarly, when multiple attorneys attend hearings, courts may exclude hours based on the level of individual contribution by any or all of the attorneys. *Alfasigma USA*, 2018 WL 3869496, at *5 (citing *W. Virginia Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 365 (3d Cir. 1990)).

The Court's review of the billing record of the Motion to Compel and the Motion for Sanctions revealed some duplicative billing, although it does not rise to any significant level. For example, in the billing record for the Motion to Compel, Ms. Beckman and Ms. Higdon both billed for attending a status conference.[32] *See Sciacca v. Louisiana*, 2005 WL 8173894, at *6 (E.D. La. June 6, 2005) (reducing hours for duplicative billing when multiple attorneys billed for attending the same conference). Similarly, in the billing records for the Motion for Sanctions, Ms. Beckman and Ms. Higdon both billed for appearing for an off-record conference with the undersigned.[33] The undersigned notes that familiarity with the respective efforts of both attorneys supports their joint participation. Nonetheless, the Court finds it appropriate to reduce the hours sought for each motion by a minimal amount considering the overall fee submission. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006); *Hopwood v. Texas*, 236 F.3d 256, 279 (5th Cir. 2000) (finding no abuse of

---

[32] R. Doc. 103-3 at 23–24.
[33] R. Doc. 104-3 at 21.

11

discretion in district court's reduction of fee award by 25% for inadequate time entries, duplicative work product and lack of billing judgment).

### 3. Attorneys' Fees for Drafting the Instant Fee Motions

Federal Rule of Civil Procedure 37(a)(5)(A) permits awarding attorneys' fees incurred in "making the motion" on a successful motion to compel. Fees awarded under that provision are therefore limited to those incurred in raising the motion to compel and may not include fees relative to a subsequent motion to fix fees. *See, e.g.*, *Idel v. LeBlanc*, 2019 WL 2088526, at *3 (E.D. La. May 13, 2019) *Rock the Ocean Productions, LLC v. H1 Events LLC*, 2016 WL 4272931, at *3 (E.D. La. Aug. 15, 20 Fed. R. Civ. P 37(b)(2)(C) authorizes the award of fees for a successful motion for sanctions and does not include the same restriction. It stipulates, however, that the sanctioned party must pay attorneys' fees "caused by the failure, unless the failure was substantially justified or *other circumstances make an award of expenses unjust*." (emphasis added).

Liberty seeks fees for significant time spent drafting the instant motions to fix fees.[34] Neither Rule 37 nor the interest of justice supports imposing fees for that time under the circumstances of this case. Thus, the time spent drafting the fee motions also warrants a reduction in the fee award.

---

[34] R. Docs. 103-3 at 36, 39–40, 42–43, 52–54; 104-3 at 24–26.

#### 4. Lodestar Total

Liberty seeks $25,885.00 in attorneys' fees for its Motion to Compel and $26,675.00 for its Motion for Sanctions.[35] In the light of the record of this matter, the applicable law, and the other relevant circumstances discussed above (including the assumption, for purposes of argument, that Ms. Clark's lawsuit will be dismissed), the undersigned finds that a 45% reduction of those amounts is appropriate. Accordingly, the lodestar comprises $14,236.75 in attorneys' fees for the Motion to Compel and $14,671.25 in attorneys' fees for the Motion for Sanctions.

### C. The *Johnson* Factors

After calculating the lodestar, the court may make an upward or downward adjustment if warranted by the *Johnson* factors. *See Johnson*, 488 F.2d at 717–19. The *Johnson* factors are:

> (1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases.

*Id.* As noted above, the lodestar is presumed to yield a reasonable fee. *Louisiana Power & Light Co.*, 50 F.3d at 324. The lodestar should thus be modified only in exceptional cases. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Finally, "to the extent that any

---

[35] R. Docs. 103-1 at 1, 104-1 at 1.

*Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required." *Migis*, 135 F.2d at 1047.

As to its Motion for Sanctions, Liberty argues that the lodestar is reasonable, but, if there were to be a *Johnson* adjustment, an upward adjustment would be reasonable based on factor (8), the results obtained.[36] Liberty makes additional arguments as to its Motion to Compel, citing factors (1), (2), and (4).[37] Ms. Clark makes no mention of the *Johnson* factors and instead relies solely on a challenge to the lodestar calculation relative to one of the two underlying motions.[38]

The Court concludes the *Johnson* factors were subsumed in the above calculation of the lodestar. Any factors left unanalyzed are either inapplicable or not persuasive enough to overcome the lodestar's presumed reasonableness. *See City of Burlington*, 505 U.S. at 562 ("[T]he fee applicant who seeks more than [the lodestar bears] the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.'") (emphasis original) (quoting *Blum*, 465 U.S. at 898)). As to Ms. Clark's request for sanctions, the arguments made in support are baseless. No sanctions or adjustment of the lodestar are warranted.

## IV. Conclusion

For these reasons,

---

[36] R. Doc. 104-1 at 10.
[37] R. Doc. 103-1 at 10–11.
[38] R. Doc. 107 at 5–6.

14

**IT IS ORDERED** that Liberty's Motion to Fix Attorneys' Fees (R. Doc. 103) is **GRANTED IN PART** and that Liberty is hereby awarded a total of $14,236.75 in attorneys' fees relative to its Motion to Compel.

**IT IS FURTHER ORDERED** that Liberty's Motion to Fix Attorneys' Fees (R. Doc. 104) is **GRANTED IN PART** and that Liberty is hereby awarded a total of $14,671.25 in attorneys' fees relative to its Motion for Sanctions.

**IT IS FURTHER ORDERED** that the motions are **DENIED** in all other respects.

New Orleans, Louisiana, this 23rd day of December, 2024.

                                              **EVA J. DOSSIER**
                                  **UNITED STATES MAGISTRATE JUDGE**